**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 24-50210 (KBO) |
| MATTHEW NASS, MATTHEW PLACE, JOSHUA LEYTON, JOHN CONBERE, and LUIS SCOTT-VARGAS, | |
| Defendants. | |

### PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS[2]

Despite agreeing to produce the documents sought by Plaintiff in this constructive

fraudulent transfer action, Defendants have produced fewer than 100 non-technical documents,

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   The Motion was initially filed under seal on February 13, 2026 [Adv. D.I. 65], pursuant to Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. Plaintiff reasonably believed at the time of filing that the Motion may have contained information that Defendants considered confidential. Upon filing Adv. D.I. 65, Plaintiff's counsel requested that Defendants' counsel provide any proposed redactions to the Motion prior to Plaintiff's deadline to file a public version. Defendants' counsel has not provided any proposed redactions. Accordingly, Plaintiff is filing the Motion publicly in its entirety. Plaintiff's counsel has so notified Defendants' counsel.  The Motion does not contain any of Plaintiff's Confidential Information or information that Plaintiff believes to be confidential.

among which Plaintiff's searches have identified a grand total of *two emails*. Defendants' production is demonstrably insufficient, including because Plaintiff has identified at least eight documents that should have been, but were not, included in Defendants' production (unless Defendants deleted them, which would in turn invite questions about spoliation). Defendants have nonetheless refused to supplement their production or disclose their search methodology. Defendants have even effectively refused to conduct a basic search for the eight missing documents Plaintiff specifically identified.

Accordingly, Plaintiff respectfully requests that the Court enter the proposed order attached as **Exhibit A** compelling Defendants to comply with their basic discovery obligations by producing the documents sought by Plaintiff and disclosing their search methodology. Such an order is appropriate pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7026, 7034, and 7037 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A.    The Complaint and Requests for Production

Plaintiff's Complaint asserts constructive fraudulent transfer claims against Defendants in connection with their sale of video game company Good Luck Games LLC ("GLG") to Debtor West Realm Shires ("WRS"). *See* D.I. 1 ("Complaint") ¶¶ 5-7, 103; D.I. 43 (order on partial motion to dismiss) at 1-2. At the time of the transfer, GLG had negligible cash, revenue, or assets—only a never-released video game called Storybook Brawl that had not progressed beyond beta testing. *Id.* ¶¶ 5, 49. As alleged in the Complaint, the transfer was a giveaway to the Defendants, one of whom was Sam Bankman-Fried's godbrother. D.I. 1 ¶¶ 17, 34.

Plaintiff served its First Set of Requests for Production on March 27, 2025 (the "Requests"). *See* Ex. 1.[3] The Requests seek documents including the following:

- **Request 3.** All Documents and Communications concerning the relationship between Interestholders[4] and Bankman-Fried.

- **Request 4.** All Communications between You and Bankman-Fried.

- **Request 5.** All Communications between You and others regarding Bankman-Fried.

- **Request 6.** All Documents and Communications concerning the value of, valuation of, or attempts to value GLG or Storybook Brawl.

- **Request 7.** All Documents and Communications concerning financial Information of GLG, including Information concerning GLG's assets, revenue, and liabilities.

- **Request 8**. All Documents and Communications concerning market research, consumer surveys, focus group reports, or user feedback regarding Storybook Brawl, including reports analyzing target demographics, projected market size, consumer preferences, user acquisition rates, user engagement, user retention, playtime, play session length, number of play sessions, user churn, daily active players, monthly active users, new users, user lifetime value, advertising metrics, or metrics used to predict the commercial performance of Storybook Brawl, including any analysis or summaries thereof.

- **Request 14**. All Documents and Communications reflecting any risks, challenges, obstacles, or potential obstacles to the commercial success of Storybook Brawl identified by Interestholders or any third party.

- **Request 15.** All Documents and Communications concerning any consideration, whether monetary or non-monetary, Interestholders received from WRS or any other Debtor.

- **Request 16.** All Documents and Communications concerning any compensation, whether salary, bonus or otherwise, You received from WRS or any other Debtor.

- **Request 17**. All Documents and Communications concerning any offer of employment made to You by WRS or any other Debtor.

---

[3] Exhibits 1-16 referenced herein are attached to the *Declaration of Matthew B. McGuire in Support of Plaintiff's Motion to Compel Production of Documents* filed contemporaneously herewith.

[4]   The Requests define "Interestholders" as "Defendants and Diane Place [Matthew Place's ex-wife] and the Place Children Trust Agreement, collectively and individually, and all of their representatives, agents, attorneys, advisors, heirs, assigns, and any other entities or Persons acting or purporting to act on their behalf." Ex. 1 at 5.

3

- **Request 28.** All Documents and Communications concerning GLG or Storybook Brawl between You and any of WRS, any other Debtor, Interestholders, or Bankman-Fried.

- **Request 33**. All Documents and Communications concerning the launch of Storybook Brawl in beta or on Steam early access, including test protocols, user feedback, bug reports, performance metrics, user engagement statistics, user retention data, and any analyses or summaries thereof.

- **Request 35**. All Documents and Communications concerning the projected lifespan, product lifecycle, or long-term revenue potential of Storybook Brawl.

- **Request 36**. All Documents and Communications concerning the anticipated or actual reception of Storybook Brawl by critics, industry analysts, or reviewers.

Ex. 1 at 12-15; *see id.* at 2 (defining "Communication" to include all written and oral means by which information might be transmitted).

Defendants served written responses to the Requests on April 28, 2025.  In response to each of the Requests, Defendants raised a series of boilerplate objections and stated "[s]ubject to and without waiver of the foregoing Objections, to the extent that they are within Defendants' possession, custody or control, ***Defendants will produce responsive, non-privileged documents that they are able to locate in the exercise of reasonable diligence***."  Ex. 2 (emphasis added).

### B.     Defendants' Two-Email Document Production

Defendants ultimately produced (a) two emails, which they produced as PDFs rather than in electronic format with metadata,[5] (b) fewer than 100 other non-technical documents consisting largely of transaction documents that Plaintiff had already produced and publicly available announcements and news articles about the GLG transaction, and (c) large quantities of irrelevant technical productions—computer code, artwork, and graphics.

---

[5]  Defendants' failure to include email metadata may have also violated the ESI protocol agreed to by the parties.  *See* D.I. 37-1 at 5-6 (metadata to be produced absent undue burden and to the extent reasonably possible).

Based on multiple searches run by Plaintiff's counsel, it appears that Defendants produced no other emails, messages, business communications, or financial records. There is little or nothing concerning Defendants' creation and operation of GLG prior to its acquisition by WRS; the negotiation of the sale of GLG and of Defendants' subsequent employment by Plaintiff; Defendants' efforts to find a buyer for GLG following FTX's bankruptcy; or Defendants' repeated offers to acquire GLG following Plaintiff's bankruptcy. Nor are there any files exported directly from email systems, messages from Slack or other workplace collaboration platforms, text messages, or other materials that are ordinarily understood to be communications and consistent with the definition of communications included in the Requests.

The foregoing matters are particularly concerning because Defendants clearly sent and received relevant documents from personal email accounts and other repositories to which Plaintiff lacks access. For example:

- Defendant Nass used his personal Hotmail account to communicate with Bankman-Fried (Ex. 3).

- Defendant Conbere and Defendant Place used their personal Gmail and Hotmail accounts, respectively, to receive daily reports from a gaming analytics platform, which included detailed metrics about Storybook Brawl, including daily and monthly active users and revenue (Exs. 4-8).

- Defendant Scott-Vargas used his personal Gmail account to participate in Slack discussions among GLG team members concerning game development (Ex. 9).

- Defendant Leyton used his personal Gmail account to receive an offer letter (Ex. 10).[6]

Defendants did not produce *any* of these documents, any documents or communications concerning these documents, or anything similar. Plaintiff is aware of them (and produced them) only because they include GLG accounts as senders or recipients. All of these example documents are responsive the Requests: the Signal and Slack messages are responsive to Requests 3, 4, and

---

[6] Excerpts of relevant portions of the foregoing documents are appended hereto for convenience.

5 (information about and communications between Defendants and Bankman-Fried) and Request 28 (communications between Defendants and WRS about GLG). The offer letter is responsive to Requests 15, 16, and 17 (Defendants' compensation and employment offers) and Request 28. And the analytics reports are responsive to Requests 6, 7, and 8 (valuation, financial information, and analytics about GLG and Storybook Brawl), Request 14 (risks or obstacles to Storybook Brawl's commercial success) and Requests 33, 35, and 36 (development, launch, long-term potential, and reception of Storybook Brawl). Ex. 1 at 12-15.

### C. Defendants' Refusal to Supplement Production or Disclose Search Methodology

On August 5, 2025, Plaintiff asked Defendants to confirm they had searched nine specific personal email inboxes: (i) john.conbere@gmail.com; (ii) juleyton@gmail.com; (iii) jwul@aol.com; (iv) mattnass@hotmail.com; (v) mathewlnass@gmail.com; (vi) placematt@hotmail.com; (vii) placematt1@gmail.com; (viii) lsv@channelfireball.com; and (ix) scottvargas@gmail.com. Ex. 11 at 3.

On August 13, 2025, Defendants' counsel confirmed that searches were performed on these accounts "to the extent that source/material was reasonably accessible," with the exception of lsv@channelfireball.com, which Defendants' counsel represented Scott-Vargas had not accessed in years. Ex. 12 at 1. Plaintiff understood that representation to mean that Defendants had searched the other eight personal email accounts and produced all responsive materials they located. Defendants' production contains almost no communications from or to those accounts, however— only the two PDF emails between Place and Conbere.

On January 12, 2026, having reviewed Defendants' production and compared it with documents in Plaintiff's possession, Plaintiff sent Defendants a letter identifying specific deficiencies. Plaintiff's letter identified eight documents (including the Bates numbers affixed to

6

Plaintiff's production), each responsive to multiple Requests and each sent from or to Defendants' personal email accounts identified in Plaintiff's counsel's August 5 correspondence.  Plaintiff's counsel also noted that Defendants failed to produce business communications and requested supplemental searches and production by January 30, 2026. As an alternative, Plaintiff's counsel requested detailed information about Defendants' search methodology if they maintained that no additional responsive materials existed. *See* Ex. 11.

On January 16, 2026, Defendants' counsel replied with a categorical refusal to "reopen closed written discovery to respond to untimely and improper demands." Ex. 13 at 2.[7]  On January 27, 2026, during a meet and confer, Defendants' counsel was unable or unwilling to provide basic information about Defendants' document collection process, including whether Defendants themselves had conducted searches for responsive materials; what document repositories had been searched; and whether the "database" counsel referenced contained anything beyond materials exchanged between the parties during discovery.[8]  Ex. 16 at 2.  Nor would Defendants' counsel confirm whether any of the Defendants had checked to see whether those documents existed in Defendants' email accounts—more than two weeks after Plaintiff's counsel's letter had identified eight missing documents by Bates number.  *Id.* at 3.

During that same meet and confer, Defendants' counsel agreed to seek authorization from his clients to search their inboxes for the eight identified documents.  *Id.*  If nothing else, this should have helped diagnose whether there was some error in the collection process, a failure to

---

[7]   The case management schedule originally called for substantial completion of document production by July 16, 2025; the parties agreed to adjourn that deadline to December 1.  *See* Exs. 14, 15.

[8]   *See* Ex. 16 at 3 ("You [Defendants' Counsel] could not identify what document repositories were searched, and though you confirmed that you possess a 'database' of documents from this action, you could not answer whether such a database contains anything beyond the materials Plaintiff has produced to Defendants or vice versa.").

conduct a proper search, or the deletion of relevant documents.  It appears from Defendants' counsel's extended silence that Defendants have refused to conduct the requested and agreed upon search.  *Id.* at 1 (last communication from Defendants' counsel regarding the agreed-upon search).

## ARGUMENT

The Court should compel Defendants to perform adequate searches of their email accounts and other data sources, produce the documents responsive to the Requests, disclose their search methodology, and award Plaintiff its reasonable fees and costs in bringing this motion.

As noted above, Defendants have produced just two emails and fewer than 100 documents in total aside from software code and the like.  They have refused to explain why they did not produce several specific examples of responsive documents that were sent to or from their personal email accounts.  And they have refused to explain what repositories they searched or how the searches were conducted, raising questions about whether counsel improperly "le[ft] it merely to the client to properly canvas the likely location of discoverable material." *Billman v. Easton Area Sch. Dist.*, 620 F. Supp. 3d 215, 221 (E.D. Pa. 2022); *see id.* (noting counsel's responsibility to act when "they learn that their prior responses are in some material respect incomplete or incorrect"). Relief is appropriate to remedy these discovery violations.  *See In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D. Del. 2020) ("Because the standard for discovery is broad, discovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have *no possible bearing* upon the subject matter of the action." (emphasis added and quotation marks omitted)).

Defendants have offered three arguments in an effort to justify their position.  *See* Ex. 13. Each is unavailing.

***First,*** Defendants argue that Plaintiff is seeking documents in Plaintiff's own possession, not Defendants'.  That is incorrect.  Plaintiff by this motion is seeking production of documents in

8

*Defendants'* possession, custody, and control, including documents in their personal email accounts. Although some documents relevant to Plaintiff's claims were located on GLG servers and hence are now within Plaintiff's control due to Plaintiff's acquisition of GLG, that fact has no bearing on Defendants' discovery obligations as relevant here.

**Second,** Defendants argue that this motion is untimely, citing the date provided in the case management schedule for substantial completion of document production. But that was a deadline for the *production* of documents—not for motions to compel a deficient production. If Defendants' position were correct, a party could insulate itself from becoming subject to a motion to compel merely by serving its entire production on the substantial completion deadline. That is not the law. To the contrary, there is "no deadline for the filing of a motion to compel." *Sandoz, Inc. v. United Therapeutics,* 2021 WL 2453142, at *1 (D.N.J. June 16, 2021). Defendants' position is particularly weak because Plaintiff has been attempting to obtain the relevant documents for months, and fact depositions have not yet begun and are not scheduled to be complete until May 29, 2026. *See Loughran v. PepsiCo, Inc.*, 2024 WL 328740, at *1 (D.N.J. Jan. 29, 2024) (depositions are "part of" fact discovery); *accord Gondek v. Hilton Worldwide, Inc.*, 2017 WL 3671305, at *2 (D.N.J. Aug. 25, 2017).[9]

**Third,** Defendants frame the questions Plaintiff posed in its above-mentioned deficiency letter of Jan. 12, 2026, Ex. 11, as "new interrogatories and requests for production." Ex. 13 at 2. That is also incorrect. Because Defendants' production appears to be materially incomplete, it is appropriate for Defendants to disclose what searches they conducted, who conducted them, how, and why the several specifically-identified documents at issue have not been produced.

---

[9]  It required significant time and effort to identify the deficiencies at issue because the two emails in Defendants' production were buried within a much larger production of source code and other technical files.

Defendants may not simply rest on the vague, unsupported, ipse dixit that they conducted a search "to the extent that the source/material was reasonably accessible." Ex. 12 at 1. *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 505 (D.N.J. 2021) (when defendant "state[d] in conclusory fashion" that it "conduct[ed] a reasonable search," plaintiff was entitled to "better understand what is meant by 'a reasonable search'"); *Sosky v. Int'l Mill Serv., Inc.*, 1995 WL 368173, at *2 (E.D. Pa. June 21, 1995) ("If defendants are still unable to respond completely to these document requests, they should so indicate this fact to plaintiff in their response, along with a statement of reasons why such information cannot be produced.").

An award of attorneys' fees and costs is appropriate under the circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A). Plaintiff's counsel has worked in good faith to obtain the discovery sought, as shown through several communications and meet and confers with Defendants' counsel as described in this motion, and Defendants' refusal to produce documents responsive to the Requests is not substantially justified.

## <u>CERTIFICATION UNDER LOCAL RULE 7026-1</u>

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Rule 7026-1(d) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Plaintiff certifies that it has conferred multiple times with Defendants' counsel telephonically, including most recently on January 27, 2026. Efforts to resolve this dispute outside of motion practice have been unsuccessful.

## CONCLUSION

The Court should grant Plaintiff's motion and enter an order in the form attached hereto as Exhibit A compelling Defendants to search for and produce the documents responsive to Plaintiff's First Set of Requests for Production (including but not limited to documents and materials in Defendants' personal email inboxes), to disclose their search methodology, awarding Plaintiff its

reasonable fees and costs incurred in bringing this motion, and such other relief as the Court deems just and proper.

Dated: February 13, 2026
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      cobb@lrclaw.com
      mcguire@lrclaw.com
      robertson@lrclaw.com

-and-

Sascha N. Rand (*pro hac vice*)
Isaac Nesser (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
sascharand@quinnemanuel.com
isaacnesser@quinnemanuel.com

Matthew Scheck (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th St, Suite 2010
Austin, Texas 78701
(737) 667-6100
matthewscheck@quinnemanuel.com

Marina Lev (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
marinalev@quinnemanuel.com

*Counsel for Plaintiff*

**Appendix:  Excerpts of Unproduced Documents (modified for legibility)**

| ☑ | Participant | Entity |
|---|---|---|
| ☑ | +16509069179 Sam Bank man-Fried | |
| ☑ | mattnass@hotmail.com M | Hotmail |
| | mattnass@hotmail.com Matt Nass | |
| | Running pretty late I think :( | |
| | +16509069179 Sam Bankman-Fried | |
| | Np | |

Ex. 3 (excerpt)

| From: | 'PlayFab Reports' via Good Luck Games Founder Email[goodluckgames@gl-games.com] |
|---|---|
| Sent: | Tue 9/15/2020 4:41:20 AM (UTC) |
| To: | Josh Utter-Leyton[goodluckgames@gl-games.com]; Johnathon Conbere[john.conbere@gmail.com]; Matthew[placematt@hotmail.com] |
| Subject: | [GLG] Daily Title Report for Storybook Brawl - 09/14/2020 PF:0064789 |

Ex. 4 at 1 (excerpt)

| From: | 'PlayFab Reports' via Good Luck Games Founder Email[goodluckgames@gl-games.com] |
|---|---|
| Sent: | Wed 9/16/2020 4:28:06 AM (UTC) |
| To: | Josh Utter-Leyton[goodluckgames@gl-games.com]; Johnathon Conbere[john.conbere@gmail.com]; Matthew[placematt@hotmail.com] |
| Subject: | [GLG] Daily Title Report for Storybook Brawl - 09/15/2020 PF:0064097 |

Ex. 5 at 1 (excerpt)

| From: | 'PlayFab Reports' via Good Luck Games Founder Email[goodluckgames@gl-games.com] |
| Sent: | Thur 9/17/2020 4:01:10 AM (UTC) |
| To: | Josh Utter-Leyton[goodluckgames@gl-games.com]; Johnathon Conbere[john.conbere@gmail.com]; Matthew[placematt@hotmail.com] |
| Subject: | [GLG] Daily Title Report for Storybook Brawl - 09/16/2020 PF:0064502 |

Ex. 6 at 1 (excerpt)

| From: | 'PlayFab Reports' via Good Luck Games Founder Email[goodluckgames@gl-games.com] |
| Sent: | Thur 9/24/2020 4:13:29 AM (UTC) |
| To: | Josh Utter-Leyton[goodluckgames@gl-games.com]; Johnathon Conbere[john.conbere@gmail.com]; Matthew[placematt@hotmail.com] |
| Subject: | [GLG] Daily Title Report for Storybook Brawl - 09/23/2020 PF:0064243 |

Ex. 7 at 1 (excerpt)

| From: | 'PlayFab Reports' via Good Luck Games Founder Email[goodluckgames@gl-games.com] |
| Sent: | Sun 9/27/2020 2:09:21 AM (UTC) |
| To: | Josh Utter-Leyton[goodluckgames@gl-games.com]; Johnathon Conbere[john.conbere@gmail.com]; Matt Nass[mattnass@goodluckgames.onmicrosoft.com]; Matthew[placematt@hotmail.com] |
| Subject: | [GLG] Daily Title Report for Storybook Brawl - 09/25/2020 PF:0064087 |

Ex. 8 at 1 (excerpt)

D0325HAERL7

Luis Scott-Vargas<scottvargas@gmail.com>
"do you like the new art style"

Ex. 9 at 2 (excerpt)

March 1, 2022

Joshua Leyton
Transmitted via email, juleyton@gmail.com
925 Lincoln St. #11A-S
Denver, Colorado 80203

Re: Offer of Employment

Dear Josh,

1. **Offer and Conditions.**

Ex. 10 at 1 (excerpt)

15

# **<u>EXHIBIT A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>               Plaintiff,<br><br>v.<br><br>MATTHEW NASS, MATTHEW PLACE,<br>JOSHUA LEYTON, JOHN CONBERE, and<br>LUIS SCOTT-VARGAS,<br><br>               Defendants. | Adv. Pro. No. 24-50210 (KBO) |

## **PROPOSED ORDER**

Upon consideration of *Plaintiff's Motion to Compel Production of Documents*, dated February 13, 2026 (the "Motion"),[2] and the Court having considered any objections and responses to the Motion; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED that:

1. The Motion is GRANTED.

2. Defendants must immediately search for and produce to Plaintiff all documents responsive to Plaintiff's First Set of Requests for Production of Documents (including but not

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

16

limited to documents and materials in Defendants' personal email inboxes), with production to be completed no later than fourteen days after entry of this Order, in the form set out in the Parties' Stipulated and Agreed Document Production Protocol (D.I. 37-1) approved by this Court on May 29, 2025 (D.I. 37).

3. Defendants must provide to Plaintiff a written explanation detailing their searches and all efforts in responding to the Requests, including by identifying:

    a. All custodians whose files were searched;

    b. Each specific device and account searched;

    c. Who conducted each search and when;

    d. All search terms used;

    e. All date ranges searched;

    f. Whether searches included sent items, received items, drafts, and deleted items;

    g. Whether searches included attachments;

    h. The number of items collected from each source;

    i. The number of items reviewed for responsiveness;

    j. Any deduplication, filtering, or exclusion criteria applied.

4. Defendants shall pay Plaintiff's reasonable fees and expenses, including attorneys' fees, incurred in filing and prosecuting the Motion.

Dated: _____, 2026
    Wilmington, Delaware

_____
THE HONORABLE KAREN B. OWENS
CHIEF UNITED STATES BANKRUPTCY JUDGE